THE STATE OF OHIO, APPELLEE, *v.* BECK, APPELLANT.

(No. 492—Decided December 19, 1947.)

*Mr. Joe M. Moorhead,* for appellee.
*Mr. W. S. Snook,* for appellant.

BY THE COURT. This is an appeal on questions of law from a judgment of the Common Pleas Court of Hancock county, wherein the defendant, appellant herein, Hallie J. Beck, was, by verdict of the jury therein, found guilty of shooting his wife with intent to kill her, and judgment of conviction and sentence was rendered and entered on the verdict.

The errors complained of by the defendant will be considered in the same order in which they are assigned.

1. The evidence produced on the trial of the cause tended to prove beyond a reasonable doubt every essential element of the offense charged and was sufficient to sustain the verdict of guilty and the judgment of conviction and sentence.

2. While the defendant, under this assignment of error, claims error in the admission of evidence offered by the state, he does not specify or argue any such claimed error in his brief, so that this court, under its statutory prerogative, will not consider this assigned error.

As shown by the proffer of evidence by the defendant, he sought to introduce his own testimony, which the court refused to admit, to the effect that on April 6, 1947, the prosecuting witness, Elsie M. Beck, telephoned the defendant at Findlay from Bowling Green and asked him to come over and get her, and that he went over to get her, found she had stayed all night with one Floyd May in a cabin near Bowling Green, and brought them both back.

The offense for which the defendant was indicted and tried is stated in the indictment as having occurred on May 15, 1947, and all the evidence tended to prove it did occur on that date, which was more than five weeks after the date of the Bowling Green incident.

The court refused to admit evidence of the Bowling Green incident, on the ground that it occurred at a period too remote from the time of the offense charged to reflect on the state of mind of the defendant at the time the offense was committed.

This evidence if admitted would not have tended to prove that the offense was committed by the defend-

ant in the heat of passion, without premeditation, as contended by the defendant, but on the other hand would have tended to prove a motive of jealousy and revenge on the part of defendant and time for deliberation and premeditation.

If this evidence had been offered by the state, it would have been error for the court to refuse to admit it, but as it was offered by the defendant it was not error for the court to refuse to admit it, for such refusal could not in any way have been prejudicial to defendant.

3 and 4. The verdict of the jury is neither contrary to the evidence nor contrary to law, as there was substantial credible evidence tending to prove beyond a reasonable doubt every essential element of the offense charged.

5. Under this assignment defendant claims error in the portion of the court's general charge to the jury, which reads as follows:

"The intent to kill is a 'specific intent,' that is the defendant *must have intended to kill Elsie M. Beck.* Intent is a state or condition of mind and is not susceptible of proof by direct or positive evidence. Intent may be inferred if *facts* have been proved by the evidence adduced from which the jury will reasonably infer such intent. In determining whether there was an intent to kill you may consider whether any method or *instrument* was used by the defendant which in your judgment was reasonably calculated to cause death. *A sane person who does an act which it is known will produce a particular result is from our own common experience presumed to have anticipated and intended the result.*"

Defendant's claim of error is directed to that part of the instruction, which we have written in italics.

In support of his claim of error he relies on the

case of *Brown* v. *State*, 156 Ark., 288, 245 S. W., 813, in which it was held:

"An instruction in a prosecution for assault with intent to kill which told the jury that the proof must show a specific intent to take life, but also that every sane man is presumed to intend the natural and probable consequences of his acts, was contradictory within itself and was calculated to confuse and mislead the jury."

In the above case, the defense of the accused was that he did not attack the prosecuting witness, Pierce, with a knife; that the fight was between his son and Pierce, in which both used their knives; and that his son inflicted the wounds on Pierce in self-defense.

In its opinion in that case, the court held that the instruction mentioned "was prejudicial, because the * * * [defendant] denied that he assaulted Pierce at all."

That case differs from the one at bar in that in the latter there was no defense that some person other than defendant committed the acts of which complaint was made.

The applicable Ohio rule is:

"The law presumes a man to intend the reasonable and natural consequences of acts deliberately done; that is, of course, where he is capable of choosing, and free to choose, between right and wrong, * * * one who deliberately points a loaded gun at another and purposely shoots him in a vital part of the body, so that death ensues, will be presumed to have intended that which he did, or that which was the natural and probable result of his deliberate acts * * *. The same is true where any deadly weapon is used." 12 Ohio Jurisprudence, 291, Section 288.

Whether such presumption, or any presumption, applies, where death does not ensue, has not been de-

cided in any reported Ohio case, but upon the same reasoning upon which the above-mentioned presumption is based it would appear that, where, as in the instant case, there was evidence tending to prove that the accused discharged a loaded gun into the body of the prosecuting witness, causing two lead bullets of large caliber to lodge in a vital part of his body, there is a presumption that the accused, if sane, intended to wound in a vital part of the body.

Adopting this presumption and considering the same with the other evidence in the case as to threats made by the defendant to and against the prosecuting witness, and the method and instrument used by the defendant in committing the offense charged, the jury could have properly found that the defendant intended to kill the prosecuting witness.

Before giving the instruction complained of, the court instructed the jury as to the various matters the state had to prove beyond a reasonable doubt to authorize a verdict of guilty, and, among other matters, "that the act, namely, the shooting of Elsie M. Beck by the defendant, was done with malicious intent to kill the said Elsie M. Beck."

The general instruction complained of simply informed the jury of the various matters it could consider in arriving at a verdict on the matter of intent. The particular part of the instruction complained of, considered in connection with the other instructions, did not, as the defendant contends, inform the jury that from the act of the defendant in shooting the prosecuting witness it could presume an intent to kill, but only that from such act it could presume he anticipated and intended the result thereof which was a discharge of two lead bullets of large caliber into a vital part of the body of the prosecuting witness.

Considering the charge on the subject matter as a

whole, we find no error in the respect claimed.

6. Under the provisions of Section 13452-1, General Code, for the suspension of the imposition of sentence of a person who had pleaded guilty or been found guilty, the matter of such suspension is within the discretion of the trial court, and although, in the case at bar, defendant's application for such suspension was refused, there is nothing in the record to show that the trial court erred by abusing its discretion in so doing.

7. Defendant has not specified or argued in his brief any errors under this assignment of error, so under its statutory prerogative the court will not consider this assignment of error.

As we find no error in any of the respects assigned, specified and argued in defendant's brief, the judgment of the Court of Common Pleas is affirmed at the costs of the defendant, and the cause is remanded for execution.

*Judgment affirmed.*

JACKSON, P. J., GUERNSEY and MIDDLETON, JJ., concur.